No. 02-346

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 127

STATE OF MONTANA ex rel., DAWN GADBAW
and LAWRENCE GADBAW,

      Relators,

    v.

THE MONTANA EIGHTH JUDICIAL DISTRICT COURT,
CASCADE COUNTY, and THE HONORABLE JULIE MACEK,
presiding,

      Respondents.

ORIGINAL PROCEEDING:     Writ of Supervisory Control,
                               In and for the County of Cascade, Cause No. BDV-99-1188,
                               The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

      For Relators:

            Gary M. Zadick, Ugrin, Alexander, Zadick & Higgins, Great Falls, Montana

            Channing J. Hartelius, Hartelius, Ferguson, Baker & Kazda, Great Falls, Montana

      For Respondent (Eighth Judicial District Court):

            Honorable Julie Macek, District Judge, Great Falls, Montana

      For Respondent (Amanda Moon):

            Paul R. Haffeman, Davis, Hatley, Haffeman & Tighe, Great Falls, Montana

            Tiffany B. Lonnevik, Lonnevik Law Firm, Kalispell, Montana

      For Respondent (Farmers Insurance Exchange):

            Mark Williams, Williams & Ranney, Missoula, Montana

                                   Submitted:  August 8, 2002
                                       Decided:  April 29, 2003

Filed:

                               Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The District Court Plaintiffs, Dawn and Lawrence Gadbaw, filed an amended complaint in the District Court for the Eighth Judicial District in Cascade County, in which they alleged that the Defendant, Amanda Jo Moon, negligently injured Dawn by the manner in which she operated her motor vehicle. They also alleged that they had been issued a contract of insurance by the Defendant, Farmers Insurance Exchange, which included underinsured motorist coverage and that their damages exceeded the limits of liability coverage available to Moon. They alleged that they were, therefore, contractually entitled to recover those underinsured benefits promised by Farmers. The District Court Defendants moved to bifurcate the claim against Moon from the claim against Farmers and that motion was granted. Gadbaws filed a motion for relief from the bifurcation order. In response, the District Court *sua sponte* dismissed Farmers from the action entirely. Gadbaws have petitioned this Court for supervisory control. We accept supervisory control and reverse the orders of the District Court.

¶2    There are two issues presented by Gadbaws' Petition:

¶3    1. Are the circumstances in this case appropriate for the exercise of supervisory control?

¶4    2. Did the District Court abuse its discretion when it bifurcated Gadbaws' claims and subsequently dismissed their claim against Farmers Insurance Exchange?

DISCUSSION

¶5    On August 16, 2001, the Petitioners, Dawn and Lawrence Gadbaw, filed a complaint in the District Court for the Eighth Judicial District in Cascade County, in which they alleged

2

that Dawn Gadbaw had been injured while a passenger in a motor vehicle when that vehicle was struck from behind by the vehicle operated by Amanda Jo Moon. Gadbaws sought recovery for Dawn's injuries and for Lawrence's loss of consortium.

¶6 In their District Court complaint, Gadbaws also allege that at the time of the collision with Moon, they had in effect a policy of insurance with Farmers Insurance Exchange which included underinsured motorist coverage. They alleged that the damages they had sustained as a result of Moon's conduct exceeded the limits of her insurance coverage and that, as a result, they are entitled to recover the contractual benefits promised by Farmers.

¶7 Moon admitted that her negligence caused the collision by which Dawn claims to have been injured. Farmers acknowledged the existence of underinsured motorist coverage and its contractual obligations. However, neither Defendant admitted that Gadbaw was injured to the extent she claimed. Nor did Farmers admit that Gadbaw's damages exceed Moon's policy limits.

¶8 Moon, who was also insured against liability by Farmers, moved to bifurcate the claim against her from the claim against Farmers and Farmers joined in that motion. The Defendants alleged that unless the actions were bifurcated, they would be prejudiced by the mention of insurance.

¶9 Gadbaws opposed the motion to bifurcate on the basis that evidence of insurance was only inadmissible for the purpose of establishing liability and that liability had been admitted and for the further reason that Montana law permits the joinder of an insurer who provides uninsured or underinsured coverage.

3

¶10    The District Court granted the motion to bifurcate and Gadbaws filed a motion for relief from that order. They contended that without relief, they would be prejudiced by having to prosecute two separate trials.

¶11    Subsequent to the hearing, at which the District Court considered Gadbaws' motion for relief from its bifurcation order, the District Court *sua sponte* dismissed Farmers from the action without prejudice. The District Court noted that because Farmers had agreed to be bound by the judgment against Moon up to the limits of its underinsured motorist coverage, Gadbaws had not stated a claim against Farmers for which relief could be granted. Gadbaws then petitioned this Court for a writ of supervisory control reversing both the District Court's order bifurcating proceedings and its order dismissing Farmers.

## STANDARD OF REVIEW

¶12    Pursuant to Rule 42(b), M.R.Civ.P., a district court may order separate trials when more than one claim has been joined in the same action "in furtherance of convenience or to avoid prejudice. . . ." This Court has held that the decision whether to bifurcate pursuant to this rule is a matter left to the discretion of the District Court. *Malta Public School Dist. v. Seventeenth Jud. Dist.* (1997), 283 Mont. 46, 50, 938 P.2d 1335, 1338 (citing *State ex rel. McGinnis v. Dist. Court*, (Mont. 1983), 673 P.2d 1207, 1208). We review discretionary rulings of the trial court for an abuse of discretion. *See In re R. F.,* 2001 MT 199, ¶ 21, 306 Mont. 270, ¶ 21, 32 P.3d 1257, ¶ 21.

¶13    Whether a party is entitled to dismissal of a claim pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim upon which relief may be granted presents a question

4

of law. We review legal conclusions of a district court to determine whether they are correct. *Lundquist v. McBeth*, 2001 MT 311, ¶ 13, 308 Mont. 1, ¶ 13, 38 P.3d 831, ¶ 13.

## ISSUE 1

¶14    Are the circumstances in this case appropriate for the exercise of supervisory control?

¶15    In *Malta Public School Dist.*, the School District sued its insurer for breach of contract and bad faith based on its failure to pay for fire damage to the junior and senior high school in Malta, Montana. The district court bifurcated the breach of contract and bad faith claims for purposes of trial and denied the School District's request that the same jury be impaneled to try both cases. The School District sought supervisory control and the insurer responded that it was not appropriate to review a discretionary order of the court.

¶16    We first referred to the standard for supervisory control set forth in *Plumb v. Fourth Jud. Dist. Court*. We stated:

> In *Plumb v. Fourth Jud. Dist. Court* (1996), [279 Mont. 363], 927 P.2d 1011, we clarified the standard for our exercise of supervisory control under Article VII, Section 2(2) of the Montana Constitution and under Rule 17, M.R.App.P. Citing *State ex rel. Whiteside v. Dist. Court* (1900), 24 Mont. 539, 63 P. 395, we stated that, without trying to define its particular functions, supervisory control enables this court 'to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate.' *Plumb,* [279 Mont. 363], 927 P.2d at 1014.

*Malta Public School District*, 283 Mont. at 48, 938 P.2d at 1336-337.

¶17    Based on the convenience of the parties and the interests of judicial economy, we held in *Malta Public School Dist.* that there was no adequate remedy by appeal for the district court's abuse of discretion and that supervisory control was appropriate in that case. Likewise, we conclude that supervisory control is appropriate in this case. Gadbaws have

5

filed two separate claims related to the same factual transaction. They have claimed tort damages from Amanda Jo Moon and contract damages from Farmers Insurance Exchange as a result of the same motor vehicle collision and whatever injuries were caused by that collision. If the District Court erred by bifurcating those claims and ultimately dismissing the claim against Farmers, the remedy by appeal would be of little consolation to Gadbaws following trial against Moon. The convenience of the parties and the interests of judicial economy justify the exercise of supervisory control.

ISSUE 2

¶18     Did the District Court abuse its discretion when it bifurcated Gadbaws' claims and subsequently dismissed their claim against Farmers Insurance Exchange?

¶19     Gadbaws contend that the District Court abused its discretion by first bifurcating the claims against Moon and Farmers and then dismissing Farmers altogether. They contend that Montana has always permitted a direct action against an injured party's underinsured motorist insurer and that, in fact, being joined as a party to a lawsuit is directly contemplated by the terms of the underinsured motorist policy. They contend that Rule 411, M.R.Evid., is inapplicable to this situation because insurance is not being offered to prove liability and that, in fact, liability is not in dispute. They contend that if they are forced to try their claims against Moon and Farmers separately, then they will incur duplicate expense, unnecessary delay and inadequate relief.

¶20     On behalf of the Respondent, Eighth Judicial District Court, Moon and Farmers contend that the District Court properly exercised its discretion when, in the first instance, it bifurcated the claims because Moon and Farmers would have been prejudiced by the

introduction of insurance into the case and that Rule 411, M.R.Evid., specifically prohibits evidence of the existence of insurance. Respondents contend that this Court's recent decision in *Dill v. Montana Thirteenth Judicial Dist. Court*, 1999 MT 85, 294 Mont. 134, 979 P.2d 188, is distinguishable because in that case the tortfeasor had settled with the plaintiff and the action was based solely on the uninsured motorist carrier's contractual obligation. They contend that there will be no duplication of proceedings because Farmers has conceded coverage and agreed to be bound by the jury's judgment. Neither Respondent has made a serious effort to defend the District Court's *sua sponte* decision to dismiss Farmers altogether.

¶21    The District Court held as follows:

> Based on the repeated stipulation of Defendant Farmers Insurance Exchange to be bound by the jury verdict in this matter up to its policy limits, the Court had determined sua sponte to dismiss Defendant Farmers Insurance Exchange from this action without prejudice. The Court finds that at this time the plaintiff has not asserted a claim against Defendant Farmers Insurance Exchange for which relief can be granted. At this time there is no breach of contract action because Defendant Farmers Insurance Exchange has stipulated that they will pay up to the limits of its underinsured motorist coverage limits if the verdict of the jury exceeds the coverage amounts available through the insurance policy of Defendant Moon.

¶22    In *Dill*, 294 Mont. 134, 979 P.2d 188, the plaintiffs brought an action for damages sustained by their son when he was hit as a pedestrian by a vehicle operated by the defendant. They joined as a defendant State Farm Automobile Insurance Company, which not only insured the defendant, but provided underinsured motorist coverage to the plaintiffs. After filing the complaint, plaintiffs settled their claims against the tortfeasor and reserved their right to proceed against their insurer. However, State Farm then moved the district court to amend the caption of the case by removing its name as a defendant and to restrict

7

the plaintiffs from mentioning to the jury that the tortfeasor had been insured or that they carried underinsured motorist coverage with State Farm. The district court granted those motions and held that the action against State Farm was not "ripe for adjudication" until the tortfeasor's fault had been established and damages assessed in the negligence action.

¶23    On appeal, we first noted in *Dill* that the action against State Farm sounded in contract and that because State Farm and the plaintiffs could not agree on the amount due under the contract, litigation between the parties was the appropriate remedy. In response to State Farm's contention that the introduction of evidence of insurance in the district court would have been prejudicial and reversible error, we held that:

> Rule 411, M.R.Evid., by its terms, applies only to liability insurance and therefore does not preclude the admissibility of the underinsured motorist policy between the Dills and State Farm. The Dills' complaint against State Farm is a coverage dispute pursuant to the terms of the State Farm policy, not a negligence action. Therefore, the result here does not contravene the purpose of Rule 411, M.R.Evid., on the admissibility of insurance. The rule only prohibits the introduction of insurance when it is offered for the purpose of showing negligence or liability. Here, the issues to be tried are separate and the rule is not violated. *See Klaudt v. State Farm Mut. Auto. Ins. Co.* (1983), 202 Mont. 247, 253, 658 P.2d 1065, 1068. Accordingly, Rule 411, M.R.Evid., does not preclude the admission into evidence of the underinsured motorist policy. [Emphasis added.]

*Dill*, 294 Mont. at 142, 979 P.2d at 192-93.

¶24    As to whether Rule 411, M.R.Evid., prohibited the introduction of evidence of the tortfeasor's liability coverage, we stated:

> Rule 411, M.R.Evid., precludes evidence of liability insurance 'upon the issue of whether the person acted negligently or otherwise wrongfully.' As explained above, the Dills demonstrate that they are legally entitled to collect damages from the underinsured driver by collecting the limits of his liability coverage from State Farm. Because the policy does not impose upon the insured, the obligation to demonstrate the legal liability of the tort-feasor, the State Farm liability policy would not be utilized to demonstrate that the tort-

8

feasor 'acted negligently or otherwise wrongfully.' As Rule 411, M.R.Evid., allows, the policy would be offered 'for another purpose'; to establish that the Dills have complied with the policy terms by settling with the tort-feasor's liability insurer before turning to their own underinsurance carrier for relief. The liability policy is relevant and admissible only to establish the Dills' compliance, and not to establish fault.

*Dill*, 294 Mont. at 142, 979 P.2d at 193.

¶25 It is clear from our decision in *Dill* that Rule 411, M.R.Evid., does not prohibit the introduction of evidence of insurance when the evidence is not offered for the purpose of establishing negligence or liability. In this case, negligence or liability has been admitted. Therefore, it is equally clear that Rule 411, M.R.Evid., does not prohibit the introduction of Moon's liability coverage or the fact that Gadbaws have underinsured motorist coverage and that Farmers has an obligation to pay Gadbaws pursuant to that coverage in the event their damages exceed the amount of Moon's liability coverage.

¶26 Nevertheless, Moon and Gadbaws argue that the introduction of insurance would be prejudicial and unfairly influence the jury's verdict. We recently addressed that same contention in *Dias v. Healthy Mothers, Healthy Babies,* 2002 MT 323, ¶ 17, 313 Mont. 172, ¶ 17, 60 P.3d 986, ¶ 17, where we stated:

> The notion that the mere mention of insurance can move a jury to ignore the law and award a windfall to the plaintiff is an ancient myth unsupported by any empirical data which has been brought to this Court's attention. Common sense dictates that the opposite is true. Jurors concerned that an individual might not have insurance are more likely to protect that individual and his or her assets from damages which, unless personal to the individual, often seem abstract and theoretical. For example, in *Million v. Rahhal* (Okl. 1966), 417 P.2d 298, 300, cited in *Sioux v. Powell* (1982), 199 Mont. 148, 153, 647 P.2d 861, 864, the Oklahoma court stated:
>
> 'The prejudice created by a showing of the absence of insurance is likely to be greater than when the existence of insurance coverage is shown. Sympathy is

9

one of the most controlling human emotions. In *City of New Cordelle v. Lowe*, [Okl. 389 P.2d 103], this court said:

'Such information encourages sympathy for a party who presumably has no way of being reimbursed for his loss than by a favorable verdict.' '

*Dias*, ¶ 17.

¶27 Likewise, in this case, we conclude that it is not the evidence of Gadbaws' underinsured motorist coverage which would prejudice a jury and possibly skew the determination of Gadbaws' damages, but the misleading impression which the Respondents wish to create that it is in fact Amanda Jo Moon, regardless of her financial wherewithal, who is responsible for the entirety of Gadbaws' damages.

¶28 The issue for the jury to decide is simply the amount by which Gadbaws have been damaged. We are not convinced that their determination would be unfairly influenced by the knowledge that Gadbaws had purchased underinsured motorist coverage for the purpose of covering those damages. There is certainly no more risk of prejudice under the circumstances in this case than there was where the tortfeasor had previously settled with the plaintiff as was the case in *Dill*. Any factual distinction between the two cases makes no meaningful difference. Furthermore, were we to accept the Respondents' argument, then every major corporation in the state should be able to conceal its identity from the jury even though properly joined in a lawsuit. That obviously is not allowed.

¶29 Finally, we conclude that the District Court erred when it held that because a jury has not yet determined Gadbaws' damages, and because Farmers has agreed to pay the amount of the verdict up to its policy limits, there is no dispute between Gadbaws and Farmers. Farmers has an obligation to pay those damages sustained by Gadbaws in excess of the

amount which will be paid by the liability limits of Moon's policy. Unless the facts have changed since this case was presented to us, Gadbaws and Farmers disagree on that amount. Therefore, there is a dispute with Farmers over its obligation which Gadbaws are entitled to litigate and a jury is entitled to consider.

¶30    For these reasons, we accept supervisory control in this matter and reverse the orders of the District Court which bifurcated Gadbaws' claims against Amanda Jo Moon and Farmers Insurance Exchange and which dismissed Farmers Insurance Exchange, and remand this case to the District Court for further proceedings consistent with this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON

Justice Patricia O. Cotter specially concurs.

¶31    I agree with all that is said in the Court's Opinion.  I write separately to add that there is no reason to afford special protection to an insurance company properly named as a defendant in a lawsuit simply because of the fact that it is an insurance company.   Where, as here, liability is not in dispute, Rule 411, M.R.Evid., does not apply.  Thus, there is no evidentiary basis for prohibiting the jury from learning of the existence of the coverage,  the insurer's refusal to pay the proceeds of its underinsured coverage, and the filing of the resulting contract claim.

¶32    Moreover, the policy of insurance between Gadbaw and Farmers contemplates litigation if the parties are unable to resolve the insured's claim.  Although we do not have the full policy before us, I presume that nothing in the policy provides that, if sued, Farmers is entitled to conceal its identity and its decision to deny payment during litigation, or Farmers would have cited it.  So, there is no contractual justification for the District Court's action, either.  In sum, there is no legal authority for the District Court's *sua sponte* decision to protect the insurer from the trial process.

¶33    I cannot identify one fundamental difference between this and any other breach of contract case.  Absent Rule 411 application, an insurer is entitled to no greater protection from litigation or disclosure of its identity than is any other defendant in a breach of contract case.

¶34    I therefore concur in the court's decision.

12

/S/ PATRICIA COTTER

Justice James C. Nelson concurs in the foregoing special concurrence.

/S/ JAMES C. NELSON

Justice Jim Rice dissenting.

¶35     I dissent. The Court justifies its intervention in this matter by creating a "straw man" crisis and then gallantly knocking the straw man down. The Court attacks a nonexistent problem and, in so doing, neglects the true problem.

¶36     The Court purports to respond to "duplication of proceedings," "duplication of expense," "unnecessary delay" and "inadequate relief," which it contends will occur because of the District Court's decisions herein. However, none of these problems will occur and are entirely illusory. There is no possibility of a second trial, with its attendant duplication and expense, by reason of the District Court's removal of Farmers from the Gadbaw/Moon trial, because Farmers has already agreed to pay whatever amount the jury would award to Gadbaws in excess of Moon's liability coverage, up to the limits of the policy. Thus, there are no remaining issues in regard to Farmers which would require a second trial, and no basis upon which to justify supervisory control.

¶37     The real issue is whether this Court will accept the District Court's efforts to make the trial between Gadbaws and Moon–the only trial which will occur–a fair one. In rejecting the District Court's efforts, this Court creates another illusory, and erroneous, crisis. The Court asserts that it must act to correct the "misleading impression which the Respondents wish to create that it is in fact Amanda Jo Moon, regardless of her financial wherewithal, who is responsible for the entirety of Gadbaws' damages." *See* ¶ 27.

¶38     The problem with this rationale is that it is inaccurate: Amanda Jo Moon, regardless of her financial wherewithal, *is* responsible for the entirety of Gadbaws' damages. There is nothing "misleading" about this reality. Further, it is not merely impression, but fact. A

14

judgment awarded for Gadbaws' injuries will be entered, in the entire amount, against Moon. That a judgment may also create a contractual obligation on the part of another–here, Farmers–to pay a portion of those damages does not change the original judgment against Moon. And at this point, Moon is hoping against hope that the financial arrangements she has made to address the risk she now faces because of her negligence will be sufficient to protect her ability to maintain her livelihood after the trial is over and any judgment is entered. To protect those interests, she also wants a fair trial.

¶39 In its misplaced focus on *Dill v. Montana Thirteenth Jud. Dist. Court*, 1999 MT 85, 294 Mont. 134, 979 P.2d 188, the Court has failed to consider Moon's interests in having a fair trial. *Dill* addressed a breach of contract claim between insureds and their insurer, State Farm, and rightfully concluded that a trial determining State Farm's obligation under its contract with the insureds should include State Farm. However, nothing in that holding can be construed as requiring that a defendant being sued for negligence, as Moon is here, face trial together with an insurance company being sued for breach of contract. Whether those matters should be tried together or separately is a matter properly placed within the sound discretion of the District Court, who must determine the potential prejudice in each case after an assessment of the parties and issues therein. Here, because a second trial will not occur, it was logical for the District Court to remove Farmers from the negligence trial to eliminate the potential prejudice from which Moon sought relief.

¶40 This Court's determination that Moon should not feel prejudiced by being forced into a trial along side Farmers is not only presumptuous of Moon's position, but is erroneous. For decades this Court has recognized that prejudice in these circumstances can legitimately

15

exist. *See State ex rel. Hereim v. District Court* (1969), 154 Mont. 112, 115, 460 P.2d 755, 756 ("[t]his court has repeatedly condemned the injection of the insurance issue into damage actions"). I would defer to the District Court's judgment that such prejudice exists here, particularly when there will be no duplication of effort or expense.

¶41 The District Court acted fairly in balancing Moon's interests and Gadbaws' interests. Although it was not necessary for the District Court to dismiss Farmers from the action, as the company should properly remain a party until its contractual obligation is satisfied, that error is harmless, given the posture of the case, as explained above. With respect to the bifurcation issue, the District Court's decision to conduct the trial of the negligence action separate from the contract action was not, in this matter, an abuse of discretion. I would decline to exercise supervisory control, but, supervisory control having been exercised by the Court, it was necessary to illuminate the Court's error herein.

/S/ JIM RICE

Chief Justice Karla M. Gray and Justice W. William Leaphart join in the dissenting opinion of Justice Rice.

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART

Justice W. William Leaphart dissenting.

¶42 I dissent for the reasons set forth in Justice Rice's dissent and for the following reasons. The Court goes to considerable length to explain that Rule 411, M.R.Evid., only prohibits evidence of insurance on the issue of liability. Since liability is admitted in the present matter, the Court reasons that insurance evidence is thus not prohibited. A list of facts which are *not prohibited* could be rather extensive. For example, there is nothing prohibiting introduction of evidence that a plaintiff is a millionaire. Does that mean that that fact is relevant? Obviously not. In the present matter, the fact that insurance evidence is not prohibited by Rule 411 does not address the separate question of whether it is admissible.

¶43 Rule 411 itself recognizes that relevancy is a separate and necessary inquiry when it allows insurance evidence "when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."

¶44 As the Court recognizes, "[t]he issue for the jury to decide is simply the amount by which Gadbaws have been damaged." Given that simple issue, the question is what is the relevance of the fact that Gadbaws had purchased underinsured motorist coverage? Rule 402, M.R.Evid., provides that all relevant evidence is admissible and that evidence which is not relevant is not admissible. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. Tellingly, the Court fails to cite any fact of consequence which would be more or less probable with evidence of the Gadbaws' underinsured motorist coverage.

17

¶45 In a brash *ipse dixit*, the Court asserts that any factual distinction between this case and our decision in *Dill v. Montana Thirteenth Judicial District Court*, 1999 MT 85, 294 Mont. 134, 979 P.2d 188, "makes no meaningful distinction." I beg to differ. *Dill* involved a coverage dispute: whether Dill, the insured, under the terms of the policy, was legally entitled to collect damages. The Court specifically addressed the relevance of the policy when it stated:

> As Rule 411, M.R.Evid. allows, the policy would be offered "for another purpose"; to establish that the Dills have complied with the policy terms by settling with the tort-feasor's liability insurer before turning to their own underinsurance carrier for relief. The liability policy is relevant and admissible only to establish the Dills' compliance, and not to establish fault.

*Dill*, ¶ 22.

¶46 Here, in contrast, there is no coverage issue. Farmers concedes that there is coverage and has agreed to pay whatever amount the jury would award to Gadbaws in excess of Moon's liability coverage, up to the limits of the Farmers policy.

¶47 Since the existence of Gadbaws' insurance coverage is not relevant to the simple issue, i.e. the amount by which Gadbaws have been damaged, I cannot conclude that the District Court, in bifurcating the contract claim from the damage claim, abused its discretion. I would deny the petition for supervisory control.

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray and Justice Jim Rice join in the foregoing dissenting opinion of Justice Leaphart.

/S/ KARLA M. GRAY
/S/ JIM RICE

18